Mitchell D. Schweitzer, J.
This is a motion by one of the three defendants herein, Samuel Goldstein, to dismiss the indictment on the ground that the facts stated therein do not constitute the crime charged, and on the further ground that the “ Court has no jurisdiction of the state of facts set forth in said indictment. ” The second ground, however, appears to be but a restatement of the first ground, and the sole problem presented for decision is whether the facts set forth in the indictment constitute the crime charged. No challenge to the indictment is advanced by either of the other two defendants, Max Chester and John Dioguardi.
*951 Preliminarily it might he observed that defendant Goldstein’s challenge to the indictment is in the nature of a demurrer (Code Grim. Pro., § 323, subd. 4). The proper procedure for challenging the sufficiency of an indictment is by a demurrer, and a demurrer cannot be interposed while, as here, a plea of not guilty stands (People v. Kahn, 155 App. Div., 821). This court, however, has decided to overlook any technical defects in the procedure followed by the moving defendant.
The indictment contains four counts. The first count charges the crime of conspiracy to violate section 380 of the Penal Law, dealing with bribery of labor representatives, and the remaining three counts charge substantive violations of the same section. For the purposes of the present motion the facts set forth in the indictment must be deemed to be true. Those facts are as follows:
During the period here involved, October 1, 1955 to February 28,1956, defendant Chester was the secretary-treasurer of Local 405, Retail Clerks International Association, A. F. L.; defendant Goldstein was president of Local 239, International Brotherhood of Teamsters, A. F. L. ■ and defendant Dioguardi was vice-president of Equitable Research Bureau, Inc. A partnership known as Kings Electro Plating Co., doing business in Brooklyn, New York, had been in contractual relationship with Local 475, United Electrical, Radio and Machine Workers of America (U. E.), as the recognized representative of its employees, under collective bargaining agreements the latest of which expired on June 30, 1955. Experiencing some difficulty in negotiating a satisfactory new contract with Local 475, the employer met with defendant Chester who proposed a plan to resolve the employer’s labor problems. The gist of this plan was that the employer would enter into a collective bargaining agreement with Chester’s local, and thereby divest the troublesome Local 475 of jurisdiction. Chester sought a payment of $35,000 from the employer to accomplish this result. Chester and the employer thereafter discussed the proposed plan with the other two defendants, and the three defendants “ agreed, promised, guaranteed and assured [the employer] that as a result of the adoption of Chester’s plan there would be no repercussions, violence, strike or work stoppage of any sort which could be caused by said Local 475 or Local 405, or any of their respective representatives. ” It was further proposed that the employer’s plant be moved from Brooklyn to Yonkers, New York. The defendants subsequently agreed to reduce the price from $35,000 to $30,000, of which sum $10,000 was paid on account.
*952 The indictment alleges that defendant Chester solicited and agreed to accept the said sum of $30,000, and received the partial payment of $10,000, ‘ ‘ upon any agreement and understanding, expressed and implied, that he should be influenced in respect to his acts, decisions and other duties ’ ’ as representative of his Local 405, and that defendants Goldstein and Dioguardi ‘ ‘ aided and abetted ’ ’ in the commission of the crime and ‘ ‘ conseled [sic], induced, procured and commanded defendant Max Chester to commit said crime.”
The consummation of these arrangements between the defendants and the employer would presumably enable the employer to dictate his future labor contracts on his own terms, with the assurance that there would be no repercussions, strike or work stoppage of any sort. As consideration for the substantial sums to be paid to the defendants, the employer undoubtedly expected to realize valuable returns in the form of payroll savings and other benefits at the expense of its employees.
The basis for the attack on the sufficiency of the indictment is that since Local 475 was the duly recognized collective bargaining representative of the employees of Kings Electro Plating Company, Chester’s union did not and could not represent those employees in collective bargaining, and Chester therefore owed no duties to such employees or to his union in relation to such employees. Although it was contemplated by the defendants that Chester’s union would displace Local 475 as the employees’ collective bargaining agent, it is contended that that result could not be legally accomplished without the free consent of a majority of the employees themselves. The claim is accordingly asserted that Chester’s agreement with the employer was not made in the performance of his duties as a representative of his union, and was consequently not in violation of section 380, and that defendant Goldstein, who is accused merely of being an aider and abettor, is likewise- not chargeable with any crime.
Subdivision 2 of section 380 declares, as it then existed, that “ Any duly appointed representative of a labor organization who solicits or accepts or agrees to accept from any person any money, property or other thing of value upon any agreement or understanding, express or implied, that he shall be influenced in respect to any of his acts, decisions, or other duties as such representative, or upon any agreement or understanding, express or implied, that he shall refrain from causing or shall prevent a strike or work stoppage or any form of injury to any business, is guilty of a misdemeanor. ”
*953 The Court of Appeals has, in the recent decision of People v. Cilento (2 N Y 2d 55, 62), called attention to the broad policy-embodied in section 380: ‘ ‘ The Legislature, in determining that any acts, duties or decisions of persons in the capacity of labor representatives were so affected with public interest and the welfare of the hundreds of thousands of union members, proscribed the solicitation, acceptance or agreement to accept money or property upon any agreement or understanding that such representative would be influenced in respect to any of his acts, decisions or duties. ”
The narrowly circumscribed scope sought to be imposed on the statute by defendant Goldstein’s reading cannot be accepted without substantially defeating the legislative purpose (cf. United States v. Ryan, 350 U. S. 299, 304). The mere fact that the arrangement made by defendant Chester was to be consummated at a future date when it was contemplated that the employees in question would be represented by Chester’s union as their collective bargaining representative, cannot operate to render section 380 inapplicable. Whether the situation be one in which a labor union official corruptly agrees to be influenced in respect to his acts, decisions or duties in respect to an existing state of facts, or whether the agreement be one so to be influenced in relation to a future state of facts, the evils sought to be reached by the statute are equally present. In either case, the agreement by the union official to betray the employees whom he is supposed to represent, whether at that time or in the future, falls squarely within the condemnation of both the letter and the underlying policy of the statute.
Nor is there any merit in the further contention that because Chester’s attempted usurpation of the prerogatives of Local 475 on behalf of his own local, pursuant to arrangement with the employer, would constitute an illegal interference with the right of the employees independently to select their own bargaining agent, Chester’s local could not become the duly accredited exclusive bargaining representative of the employees of Kings Electro Plating Company and Chester consequently would be under no legal duty to such employees. Whether or not the assumption by Chester’s local of the role of bargaining representative for the employees here involved would be held to be in violation of controlling law, it is nevertheless clear that so long as it occupied that role it would be obligated to discharge the duties thereof honestly and faithfully for the best interests of the employees. A trustee who becomes such by fraud or other illegal means owes no less fealty to his cestui que trust. There is thus no basis or warrant for the claim that Chester would not have *954 any duties as respects the particular employees, or that he could arrange with impunity to betray their interests. It has indeed been held under comparable provisions of the Federal Labor Management Relations Act, 1947 (U. S. Code, tit. 29-, § 186, subd. [a]) that the solicitation or receipt of a bribe by a union official is punishable as a crime even though such official is not the exclusive bargaining representative of the employees involved (United States v. Ryan, 350 U. S. 299, 307, supra).
The case of Hornstein v. Paramount Pictures (292 N. Y. 468), urged as support for defendant Goldstein’s position, is not in point. All that was there held was that corporate officers and directors who were coerced into making certain payments out of the corporate funds to labor union officials in order to avoid a threatened illegal strike, could not be compelled to restore such moneys to the corporation. The Court of Appeals declared (pp. 471-472) that it was “ not ready to impute to section 380 of the Penal Law the meaning that one who is victimized by an extortion of the kind in question should on that account suffer loss of his liberty or property Section 380 at that time provided only for the punishment of one who bribed or attempted to bribe a labor representative (now § 380, subd. 1), the more broadly worded provisions now applicable to the union official who solicits, accepts or agrees to accept a bribe (§ 380, subd. 2) having been first added by chapter 675 of the Laws of 1953, effective September 1, 1953. Obviously, no issue as to the criminal culpability of the union officials who extorted the payments in Hornstein was before the courts in that case and can in no event be held to have been there decided.
In People v. Cilento (2 N Y 2d 55, 60-62, supra) the Court of Appeals emphasized the broad scope of subdivision 2 of section 380 and held that it extended to any bribe to influence “ any ” of a union official’s acts, decisions, or duties, even though affecting the discharge of a separate position which he held, by virtue of his union office, as a trustee of an independent employees’ welfare fund. Likewise, in the present case, it cannot be held that the statute is so incomplete and lacking in vitality as to exclude from its ambit the solicitation or receipt of money by a labor representative in return for his agreed betrayal of employees in the manner charged in this indictment.
The motion is in all respects denied.